UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER 21-60253-Cr-MOORE

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**

**DEAN ZUSMER,**

        **Defendant.**

_____/

## MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S SENTENCING MEMORANDUM REGARDING APPLICATION OF U.S.S.G. §3C1.1

*A. The Court should decline to apply the 2-level enhancement for perjury and/or obstruction sought by the Government as a result of Dean's testimony at trial.*

1. In its Sentencing Memorandum, the Government recommends that Zusmer's advisory guideline range be enhanced two levels pursuant to U.S.S.G. § 3C1.1 for obstructing the administration of justice by allegedly committing perjury during his trial testimony by denying his knowledge of and participation in the offenses of conviction.

2. Although the Government's position was noted the Presentence Investigation Report ("PSR") at paragraphs 72 and 98, United States Probation did not include it in the calculation of the guidelines in the final PSR. Additionally, the Government failed to lodge a timely objection. Rather, and in the absence of a Motion for Variance from the Advisory Sentencing Guidelines, the Government's Sentencing Memorandum (Document 44) urges the Court to add it to the advisory sentencing guidelines calculation and increase

1

the total offense level to 30 with an advisory sentencing guidelines range of 97 to 121 months. The Defendant submits that imposition of this 2-level enhancement is neither legally appropriate nor warranted and would result in a sentence that is greater than necessary.

3. In advocating for a two-level enhancement under § 3C1.1, the Government employs a faulty syllogism which suggests that Zusmer perjured himself by denying knowledge of facts it presented in its case in chief, which must inexorably be inferred from the fact that the jury convicted him. The jury, so goes the Government's thinking, must have rejected his testimony and credited other evidence in arriving at its guilty verdict.[1]

4. This assertion by the Government is not sufficient to apply the enhancement:

> [T]estimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent. For these reasons, if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out.

*United States v. Dunnigan,* 503 U.S. 87, 95 (1993)

5. In *Dunnigan*, the Supreme Court warned against the application of § 3C1.1 in a reflexive way any time a defendant who testified in their own behalf is convicted. Citing its own precedent in *U.S. v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 282 (1978) the Court wrote, that even where a convicted defendant's testimony is deemed false, a

---

[1] See Govt's Sentencing Memo (Document 440) at pg. 11. "He lied about not knowing what a doctor's order was. He lied about purchasing doctor's orders. He lied about his partnership with Waxman. He lied about his role at the DME company. He lied about the nature of payments he made to Waxman as well as to marketers. And, among other things, he lied about knowing that his DME was submitting fraudulent claims to Medicare. And the jury rejected his lies, credited other evidence, and convicted him of conspiracy to commit health care fraud, health care fraud, conspiracy to solicit and pay illegal kickbacks, payment of illegal kickbacks, and filing false statements."

2

point not conceded herein, an enhancement under § 3C1.1 does not necessary follow absent specific findings of materially false testimony demonstrating a willful intent to deceive the jury: "[n]othing we say today requires a sentencing judge to enhance, in some wooden or reflex fashion, the sentences of all defendants whose testimony is deemed false." 438 U.S., at 55, 98 S.Ct., at 2618.

6. Courts nationwide have been consistent on the point that the enhancement for perjury under § 3C1.1 must be pegged to some particularized, specific finding testimony that is provably false, material, and designed to mislead the jury.

> "Therefore, a two-step procedure is required before a district court can find that a party has committed perjury and obstructed justice: "first, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." United States v. *Sassanelli*, 118 F.3d 495, 501 (6th Cir.1997)"

See *United States v. Roman-Oliver*, 564 Fed.Appx. 156 (6th Cir. 2014).

For purposes of applying an obstruction of justice enhancement under U.S.S.G. § 3C1.1, cmt., application n. 4(b) provides four elements which are required to make a perjury finding: (1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory. While specific findings as to each instance of a materially false statement are preferable, an appellate court can affirm if the district court makes a general finding of obstruction of justice that encompasses all of the factual predicates of perjury. *United States v. Epko*, 266 Fed. Appx. 830 (11 Cir. 2008). In *Epko*, the Eleventh Circuit upheld

3

the 2-level enhancement under § 3C1.1 because it found that the Defendant made statements during his testimony that were wholly irreconcilable with the jury verdict. For example, the defendant's testimony was directly contradicted by specific, objective facts including a recorded telephone call where the defendant "acknowledged that delivering a [power operated vehicle] to a beneficiary, but billing Medicare for a power wheelchair could "easily get somebody into trouble," and further admitted that "[a]ll [he] had wanted was to find anywhere to get money back.... Money that [he] had spent on [the customer's] chair." *Id.* at *2.

7. In *United States v. Carreras*, 793 Fed. Appx. 859 (11th Cir. 2019), the Eleventh Circuit again upheld a two-level enhancement under § 3C1.1 where it found the defendant had, during the course of her testimony, contradicted a number of pieces of direct evidence in order to exonerate herself:

> During her testimony, Carreras denied flatly having signed patient progress notes without having seen the patient, having treated or evaluated non-occupational-therapy patients, and having received compensation for seeing non-occupational-therapy patients. Carreras's testimony was contradicted by the detailed testimony of several of Carreras's coconspirators about Carreras's active participation in the conspiracy and by evidence that Carreras benefitted financially from the fraudulent scheme. During her testimony, Carreras also denied the authenticity of her signature on documents (including on her own passport) that were later shown to bear her actual signature.

*Carreras* at 862-863.

8. Dean Zusmer's case is highly distinguishable from both *Epko* and *Carreras*. Dean's testimony, and his defense theory more generally, was simply that he did not know the DME prescriptions that Active Assist was filling were being marketed through the use

4

of illegal telemarketing and kickbacks. His trial testimony was that he did not know, and the Government's theory was that he did. But his testimony was not deceptive and he did not try discredit the authenticity of the Government's evidence as in *Carreras*. Rather, his testimony reflected his knowledge of a specific portion of the evidence presented by the Government.

9.  The caselaw cited by the Government in support of its position cites the general rule, but fails to demonstrate sufficient factual comparisons which would demonstrate the applicability of the facts in those cases to the facts in the case at bar. In fact, none of the caselaw is sufficiently fact specific to apply to this analysis. Such a blanket and broad application of the enhancement as a consequence of testifying in one's own defense would abrogate the recognized constitutional right to testify. A defendant has a constitutional right under the Due Process Clause of the Fourteenth Amendment to take the witness stand and to testify in his or her own defense. *Rock v. Arkansas*, 483 U.S. 44 (1987). In light of the fact that Zusmer's alleged perjurious statements are supportive of his overall defense of lack of knowledge, application of the enhancement under § 3C1.1 under these circumstances would have an immediate and unconstitutional chilling effect on defendants' right to testify in their own defense.

10.  Courts' prohibitions against applying § 3C1.1 in the absence of specific findings of willful, material, and deceptively false testimony should be of particular note in this case where the Government relies primarily on the fact that Zusmer was contradicted by its witnesses about what he knew. This has been found to be insufficient to sustain an enhancement under § 3C1.1 :

> To comply with Supreme Court precedent, a sentencing court must make and articulate specific findings before applying an obstruction of justice enhancement:
>
> It is not enough for a sentencing judge to recognize conflicting testimony and resolve in his own mind which witness is credible. To comply with the Supreme Court's directive in *Dunnigan*, the sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious. The judge must, at least briefly, explain why the intentional perjury was material.

*United States v. Spears*, 49 F.3d 1136, 1143 (6th Cir.1995) (internal citations omitted).

11. The Government invites this Court to believe that the falseness of Zusmer's testimony can be inferred from his conviction; that his failure to prevail upon the jury shows that he was lying. This is precisely the kind of rigid, formalistic application of § 3C1.1 that courts have rejected in the past. Section 3C1.1 only applies where the testimony was material, specific, and designed to mislead the jury. It does not apply simply whenever a Defendant who takes the stand in his own defense is convicted.

12. Furthermore, the issue of whether perjury can be considered obstruction of justice was not squarely presented to the Supreme Court in *Dunnigan*. The court was specifically addressing the narrow issue of the application of §3C1.1 to the facts of that case. However, the *Dunnigan* court clearly observed:

> **Were we to have the question before us without reference to this commentary, we would have to acknowledge that some of our precedents do not interpret perjury to constitute an obstruction of justice unless the perjury is part of some greater design to interfere with judicial proceedings.** *In re Michael,* 326 U.S. 224, 228, 66 S.Ct. 78, 80, 90 L.Ed. 30 (1945); *Ex parte Hudgings,* 249 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656 (1919). Those cases arose in the context of interpreting early versions of the federal criminal contempt statute, which defined contempt, in part, as "misbehavior of any person ... as to obstruct the administration of justice." 28 U.S.C. § 385 (1940 ed.) (Judicial Code § 268), derived from the Act of Mar. 2, 1831, Rev.Stat. § 725. See also 18 U.S.C.

6

§ 401(1) (same).

**In *Hudgings* and *Michael,* we indicated that the ordinary task of trial courts is to sift true from false testimony, so the problem caused by simple perjury was not so much an obstruction of justice as an expected part of its administration.** See *Michael,* 326 U.S., at 227–228, 66 S.Ct., at 79–80. Those cases, however, were decided against the background rule that the contempt power was to be confined to " 'the least possible power adequate' " to protect "the administration of justice against immediate interruption of its business." *Id.,* at 227, 66 S.Ct., at 79 (quoting *Anderson v. Dunn,* 6 Wheat. 204, 231, 5 L.Ed. 242 (1821)). In the present context, on the other hand, the enhancement provision is part of a sentencing scheme designed to determine the appropriate type and extent of punishment after the issue of guilt has been resolved.

*Dunnigan* at 93-94 (emphasis added)

13. U.S.S.G. § 3C1.1 provides:

If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

Commentary Application Note 4(B), provides:

4. Examples of Covered Conduct.--The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies:
(B) committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction;

The commentary application note thereby expands the definition of obstruction of justice to encompass perjury. The Defendant contends that this expansion can no longer be applied in light of the Supreme Court's opinions in *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), *Stinson v. United States*, 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 65

7

S.Ct. 1215, 89 L.Ed. 1700 (1945), which culminated in *Kisor v. Wilkie*, __ U.S. __, 139 S.Ct. 2400, 204 L.Ed.2d 841(2019). The definition of obstruction of justice is not ambiguous; therefore, there is no reason to give it any deference over the guideline provision.

> *Seminole Rock* instructed that when considering how to treat an issuing agency's interpretation of a regulation, a court initially should consider whether "the meaning of the [regulation] is in doubt." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). If the meaning is in doubt—if the regulation is ambiguous—the court can then consider the issuing agency's interpretation of the regulation. *Id.* At that point, the court should afford the agency's construction of its own regulation "controlling weight" unless it is "plainly erroneous or inconsistent with the regulation." *Id.*
>
> Relying on its decision in *Seminole Rock*, in *Stinson* the Supreme Court treated the Sentencing Commission's commentary to the Guidelines like an agency's interpretation of its own regulation: "it must be given 'controlling weight unless it is plainly erroneous or inconsistent with' " the Guideline's text. *Stinson*, 508 U.S. at 45, 113 S.Ct. 1913 (quoting *Seminole Rock*, 325 U.S. at 414, 65 S.Ct. 1215). The Court explained that the Sentencing Commission could resort to the commentary to interpret the Guidelines only "if the [G]uideline which the commentary interprets will bear the construction." *Id.* at 46, 113 S.Ct. 1913. When the "commentary and the [G]uideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the [G]uideline." *Id.* at 43, 113 S.Ct. 1913.
>
> Four years after *Stinson*, the Supreme Court reaffirmed *Seminole Rock* in *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). In *Auer*, the Court concluded that the Secretary of Labor's interpretation of a regulation issued by the Department of Labor was "controlling" because it was not "plainly erroneous or inconsistent with the regulation." *Id.* at 461, 117 S.Ct. 905 (internal quotation marks omitted).
>
> A few years ago, the Supreme Court revisited *Auer* deference and clarified the proper application of the doctrine. In *Kisor v. Wilkie*, the Supreme Court examined *Auer* deference in the context of an administrative agency's (the Department of Veterans Affairs (VA)) interpretation of one of its regulations. —– U.S. ——, 139 S. Ct. 2400, 2408–09, 204 L.Ed.2d 841 (2019). The Court reaffirmed *Auer*'s "important role in construing agency regulations"

8

while also "reinforc[ing] its limits" and "cabin[ing] ... its scope." *Id.* at 2408. It explained that *Auer* was "rooted in a presumption ... that Congress would generally want the agency to play the primary role in resolving regulatory ambiguities." *Id.* at 2412. Therefore, the Court clarified, "only if a regulation is genuinely ambiguous" should *Auer* deference be applied. *Id*. at 2414. To determine whether ambiguity exists, courts first "must exhaust all the 'traditional tools' of construction." *Id*. at 2415 (citing *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). "If uncertainty does not exist" after applying these tools, "there is no plausible reason for deference." *Id*.

*See, United States Dupree*, 57 F.4th 1269 at 1274-1275 (11th Cir. 2023)(internal footnotes deleted).

14. The Defendant contends that the before relying upon the commentary application notes, the Court must first make a determination that the guideline is genuinely ambiguous. As the Third Circuit Court of Appeals discussed in *United States v. Banks*, 55 F.4th 246 (3rd Cir.2022):

> Courts treat the Sentencing Guidelines as legislative rules, and the Sentencing Commission's comments interpreting its Guidelines as interpretative rules. Historically, first, under *Bowles v. Seminole Rock & Sand Company*, and, later, under *Auer v. Robbins*, courts deferred to the Sentencing Commission's interpretation of its own regulations. Application of *Auer* deference required courts to defer to the Sentencing Commission's commentary for a Guideline unless that interpretation was plainly erroneous or inconsistent with the Guideline.
>
> Recently, however, the Supreme Court decided *Kisor v. Wilkie*, in which it made clear that, before according *Auer* deference, "a court must exhaust all the 'traditional tools' of construction," and determine that a regulation is "genuinely ambiguous." Under *Kisor*, then, a court must consider the "text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on."
>
> What's more, a court must make an "independent inquiry" into the "character and context" of the reasonable interpretations of the regulation. The Supreme Court identified three character-and-context circumstances under which an agency's otherwise reasonable interpretation should not receive controlling weight: (1) when an agency's interpretation is not its

9

"'authoritative' or 'official position' "; (2) when an agency's interpretation does not implicate its "substantive expertise" in some way; and (3) when an agency's reading does not reflect its "fair and considered judgment" but rather is a "convenient litigating position," a "*post hoc* rationalization" or parroting of a federal statute. Under *Kisor*, then, there must be both a genuine ambiguity in an agency's regulation and the character and context of an agency's interpretation must fall within the regulation's zone of ambiguity.

Against this backdrop, this Court sat *en banc* and unanimously concluded that this reprised standard for *Auer* deference applied to the Sentencing Commission's interpretive commentary. "If the Sentencing Commission's commentary sweeps more broadly than the plain language of the guideline it interprets, we must not reflexively defer. The judge's lodestar must remain the law's text, not what the [Sentencing] Commission says about that text." That framework, then, applies to Banks's challenge to § 2B1.1's intended-loss enhancement.

*Banks* at 255-256.

The Defendant submits that the use of the term "obstruction of justice" is not "genuinely ambiguous" and the commentary application note impermissibly expands the definition, and should be accorded no weight.

Respectfully submitted,

*Barry M. Wax*
**Barry M. Wax**
Florida Bar No. 509485
**LAW OFFICES OF BARRY M. WAX**
701 Brickell Avenue
Suite 1550
Miami, Florida  33131
Telephone   (305) 373-4400
barry@barrywax.com

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on this 19th day of April, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Patrick Queenan, Trial Attorney (Patrick.Queenan@usdoj.gov), Catherine Wagner, Trial Attorney (Catherine.Wagner@usdoj.gov) and Meredith Hough, Trial Attorney (Meredith.Hough@usdoj.gov), U.S. Department of Justice, Criminal Division, Fraud Section, 1400 New York Avenue NW, Washington, DC 20005, and all defense counsel of record.

*Barry M. Wax*
**Barry M. Wax**